IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2019 Session

## MAURICE JEVON CHAPMAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR 170482      Deanna Bell Johnson, Judge**

### No. M2019-00246-CCA-R3-PC

The Petitioner, Maurice Jevon Chapman, pleaded guilty to aggravated robbery, and the trial court entered the sentence to which the parties agreed, twenty years, as a Range II offender. The State filed a notice of *nolle prosequi* of nine other counts against him. The Petitioner filed a timely petition for post-conviction relief in which he alleged that his counsel was ineffective for failing to explain to him the theory of criminal responsibility for another, rendering his guilty plea unknowingly and involuntarily entered. The post-conviction court dismissed the petition after a hearing. On appeal, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Vakessha Hood-Schneider, Franklin, Tennessee, for the appellant, Maurice Jevon Chapman.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case originates from the Petitioner's participation in a violent home invasion. As a result of this invasion, a Williamson County grand jury indicted the Petitioner for: one count of especially aggravated kidnapping, one count of aggravated robbery, two counts of aggravated burglary, one count of theft of property valued over $1,000, one count of conspiracy to commit aggravated robbery, and several firearm offenses,

including being a felon in possession of a deadly weapon. The Petitioner was indicted along with five co-defendants, three of whom went to trial before his guilty plea and a fourth who testified against the others at that trial.

A transcript of the guilty plea is not included in the record on appeal. The indictment regarding the offense to which the Petitioner pled guilty reads:

> The Grand Jurors for Williamson County, Tennessee, duly impaneled and sworn, upon their oath, present that **MAURICE JEVON CHAPMAN, EMILY LEE FAULKNER, MARIO GARCIA FLORES, HUMBERTO MORALES, KEYONA MARTINA NEWELL AND ELIZABETH CHANDLER PITTMAN**, heretofore, to-wit, on February 26, 2014, before the finding of this presentment, in said County and State, did unlawfully, feloniously, intentionally, knowingly and violently or by putting the victim, to-wit: James Reese Ewton, in fear, take from the person of said victim personal property of value, accomplished with a deadly weapon or display of any article used or fashioned to lead said victim to reasonably believe it to be a deadly weapon, in violation of Tennessee Code Annotated 39-13-402(a)(1), a class B felony, and against the peace and dignity of the State of Tennessee.

The indictment also indicates that co-defendant Pittman provided the information regarding the victim and his assets and that the Petitioner met with the co-defendants on February 26, 2014. Armed with guns, masks, and gloves, the Petitioner and his co-defendants travelled to the victim's home. The Petitioner then entered the rear of the victim's home and opened the home for the co-defendants. He then placed a phone call for instructions during the home invasion.

The record, while incomplete, indicates that three of the Petitioner's co-defendants went to trial together and were convicted of all except one offense. They received sentences of twenty-four years, thirty years, and forty-eight years, respectively. One month later, the Petitioner entered a plea of guilty to the charge of aggravated robbery, and the State offered an order of *nolle prosequi* for the other nine charges. The parties agreed that the Petitioner would be sentenced to twenty years, as a Range II offender.

### B. Post-Conviction Proceedings

In 2014, the Petitioner filed a petition for post-conviction relief, alleging in part that his trial counsel ("Counsel") had been ineffective for failing to explain to him the theory of criminal responsibility for another. At a hearing on the petition, the parties presented the following evidence: The Petitioner testified that he fired his first lawyer

and that Counsel represented him for approximately one year before he entered his guilty plea. The Petitioner recalled that he met with her only three times during that year when she came to the jail to meet with him.

The Petitioner said that, during their first meeting, he and Counsel discussed the charges he faced. During the second meeting, the two discussed his co-defendants' convictions at trial and the lengthy sentences that they received. At their third meeting, Counsel informed the Petitioner that the State had offered him a twenty-five year sentence in exchange for his guilty pleas to aggravated robbery and one of the gun offenses, which Counsel encouraged him to consider. Counsel explained to the Petitioner that he was a Range II offender and that he faced a lengthy sentence, twenty to forty years, for the aggravated kidnapping alone.

The Petitioner testified that Counsel never discussed the evidence against him but only told him that one of his co-defendants planned to testify against him. He said Counsel never reviewed any discovery with him or discussed with him any possible defense strategy. The Petitioner testified that, after some negotiation, Counsel secured for him an offer with the State that included dropping the gun charge, so he would plead guilty to aggravated robbery in exchange for a sentence of twenty years.

The Petitioner said that he filed his petition for post-conviction relief because he felt that his lawyer was not "efficient enough" and that it was too "much time just for . . . aggravated robbery." The Petitioner said that Counsel should have spoken with his co-defendants and should have investigated further the victim's contradicting statements.

The Petitioner said he told Counsel that he and his co-defendants planned to commit an aggravated burglary but not aggravated robbery. The Petitioner opined that, had Counsel investigated further, she would have learned that a co-defendant intended and was willing to testify that the Petitioner did not have anything to do with the "initial robbery itself, that [his co-defendant] did that upon himself." The Petitioner said that the plan included that the victim would not be at home at the time of the robbery. He and his co-defendants intended to get in, take money and drugs, and leave before the victim returned. He said he could not be held "criminally responsible" for robbery when he did not intend to rob anyone but only to burglarize the home.

During cross-examination, the Petitioner testified that he fired his first attorney because that attorney wanted him to accept a plea agreement that included that he serve forty years. The Petitioner agreed that he and Counsel discussed his prior criminal history, which included robbery and assault of a police officer. He agreed that Counsel discussed with him "criminal responsibility" and that he was culpable even if he was only present, but he said she did not go into "depth about what it meant." He agreed that he

knew before his guilty plea that he could be held responsible for all of the charges even though he may not have committed some specific part of the offense.

The Petitioner agreed that Counsel informed him that his co-defendant received a forty-eight year sentence and that the Petitioner should take the twenty-five year offer. He also knew that his sentence would be required to be served at 85% because he was a Range II offender. At the time of his guilty plea, he also knew that his co-defendants had been tried and convicted. The Petitioner said that the only proof that he knew of against him was his co-defendant's statement. He said that he also knew that he had made a "statement" that the State had in which he tried to "help [his] sister," co-defendant Newell, which was the only reason he was "sitting here with y'all right now." He said that in that statement to the police he implied that he was present at the robbery but did so to protect her. He told the police that he was holding a gun during the home invasion because police were implying that it was his sister who was holding the gun.

The Petitioner agreed that his first attorney gave him discovery, which the Petitioner allowed another inmate to assist him by reviewing. The inmate showed him inconsistencies in the victim's statements.

The Petitioner said he told Counsel that his co-defendant would testify on his behalf. Counsel told him that such a strategy would be ineffective, so he did not pursue the matter further. The Petitioner refused to identify which co-defendant intended to testify on his behalf. Upon further instruction from the court, the Petitioner revealed that co-defendant Flores would have testified on his behalf. He further noted that he wrote a letter to his post-conviction attorney informing her that co-defendant Flores was willing to testify at the post-conviction hearing. The Petitioner then admitted that he had lied when he originally testified that it was co-defendant Morales who would testify for him because he was concerned that the State would scare co-defendant Flores into not testifying. He reiterated that it was co-defendant Flores who would testify for him.

The Petitioner agreed that, on the day of his arrest, he jumped from a van that contained the victim's stolen property and fled from the police. He said that he knew of this circumstance before he pleaded guilty. The Petitioner agreed that he wrote a letter to the victim in which he apologized for what had happened to the victim.

During redirect examination, the Petitioner agreed that he knew that he could receive at least forty-eight years if convicted, and Counsel told him that he might not "see the light of day." The Petitioner then said that he had falsely testified when he said that Counsel did not give him discovery and that she had, in fact, given it to him. He maintained however that the two never discussed it.

4

Counsel testified that she had been practicing law for fifteen years at the time she began representing the Petitioner, and the majority of her practice had focused upon criminal law. Counsel recalled that she met with the Petitioner's first attorney and discussed the case with him at length before she met with the Petitioner. She said that one of the biggest issues that emerged when talking about the Petitioner was criminal responsibility. Counsel said that the Petitioner's first attorney's notes indicated that he had discussed this theory with the Petitioner and had provided him with case law. She said that she discussed this concept with the Petitioner "pretty much every time he and [she] met."

Counsel testified that the Petitioner asked her to speak with co-defendant Faulkner's attorney, which she did. She also spoke with the attorneys for the other co-defendants. The Petitioner mentioned that co-defendant Flores would be willing to testify on his behalf, but she could not confirm this fact when she spoke with co-defendant Flores's attorney. Counsel said that she discussed with the Petitioner that he would be facing harsher penalties because he was a Range II offender.

Counsel testified that she and the Petitioner discussed the evidence that the State intended to present against him, and she said he had a copy of the State's discovery. She said that they went over the fact that the State had his statement to police and the victim's testimony from the preliminary hearing. Counsel said that the Petitioner's first attorney's notes indicated that the two had discussed that the State had the Petitioner's apology letter to the victim, and that the Petitioner's first attorney asked him to refrain from writing any more similar letters. The discovery file included an officer's statement that the Petitioner had been injured when he fled from the van to avoid apprehension and that the victim's property was inside the van.

Counsel discussed with the Petitioner that, even though his co-defendants had not been convicted of the most serious charge, the Petitioner still faced the possibility of being convicted of that offense. She reminded him that this was a Class A felony and that, because it was a different jury and a different trial, the outcome remained uncertain.

Counsel identified the packet of information she reviewed with the Petitioner prior to his pleading guilty, including the waiver of rights. She said that he signed this information after the two reviewed it and that he did so voluntarily.

During cross-examination, Counsel agreed that the Petitioner waived his rights based upon advice that she gave him. Counsel said that she discussed the theory of criminal responsibility with the Petitioner "more than once." The Petitioner did not agree with the premise of this theory and had questions about it. He disagreed that he could be found guilty under a theory of criminal responsibility. She said he asked questions

5

related to facts he found in the discovery and how he could still be criminally responsible. Counsel opined that the Petitioner had a full understanding of this concept, noting that his questions were not about a failure to understand the concept but rather a failure to agree with the concept.

The hearing was then adjourned to give the Petitioner an opportunity to subpoena co-defendant Flores. Ultimately, the Petitioner chose not to offer any more evidence. The parties submitted written closing arguments, and the post-conviction court filed an order denying the petition.

The post-conviction court found:

> In the instant case, Trial Counsel met with Petitioner several times and discussed the case. Trial Counsel received and reviewed the Discovery in the case and then provided that Discovery to Petitioner, even though [the Petitioner's first attorney] had already provided it. Trial Counsel then discussed with Petitioner the Discovery, the evidence, the law, the elements of the crime which must be proven by the State, Petitioner's chances at trial, and Petitioner's status as a Range II, Multiple Offender because of his prior criminal record. Trial Counsel also discussed with Petitioner the consequences of Petitioner testifying at trial, as well as numerous other circumstances of the case. Clearly, Trial Counsel conducted a "thorough investigation of law and facts relevant to plausible options." Id. Petitioner has not proven that he received ineffective representation.
>
> B. Prejudice
>
> Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *State v. Davis*, 2002 WL 43587 (Tenn. Crim. App. 2002) (citing *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). To prove actual prejudice, the petitioner must show more than "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Here, Petitioner has not shown that he suffered prejudice and he has not proven that he would not have ple[d] guilty but for Trial Counsel's alleged deficient representation. Accordingly, Petitioner has not shown that he is entitled to Post-Conviction Relief on his claim of ineffective assistance of counsel.

With regard to the Petitioner's claim that his guilty plea was not knowingly and voluntarily entered, the post-conviction court found:

6

In the instant case, all of these relevant factors indicate that Petitioner knowingly, intelligently, and voluntarily entered his guilty plea. As for the first factor, the defendant's relative intelligence, the Court heard Petitioner's testimony at the Post-Conviction Hearing and finds Petitioner to be intelligent enough to enter a guilty plea.

As for the second factor, the degree of the defendant's familiarity with criminal proceedings, Petitioner has a fairly lengthy criminal history and had entered guilty pleas prior to entering the guilty plea in this case. Indeed, Petitioner is a Range II, Multiple Offender. The Court finds Petitioner was very familiar with criminal proceedings.

The third factor to be considered is whether the defendant was represented by competent counsel and had the opportunity to confer with counsel. As indicated above, Trial Counsel provided Petitioner with proper and adequate representation. Moreover, Petitioner had the opportunity to meet with Trial Counsel on several occasions to discuss Petitioner's case, the elements of the crimes charged, the Discovery, any possible defenses, his chances at trial, his desire to testify, and the consequences of his status as a Range II, Multiple Offender. Thus, the Court finds Petitioner was represented by competent counsel and had the opportunity to confer with counsel.

The fourth factor to be considered, the extent of advice from counsel and the court concerning the charges against the defendant, lead to the conclusion that Petitioner's plea was knowingly and voluntarily entered. Trial Counsel gave Petitioner more than proper and ample advice about the charges and the guilty plea. In addition, the Court also properly and adequately advised Petitioner about the charges and the guilty plea during the Plea Hearing.

The final factor to be considered, the reasons for the defendant's decision to plead guilty, also leads to the conclusion that Petitioner's plea was knowingly and voluntarily entered. As stated above, Petitioner is a Range II, Multiple Offender and he faced a very lengthy prison sentence. His codefendants received sentences of forty-eight years, thirty years, and twenty-four years - and that was without being convicted of the most serious offense, which Petitioner still faced if he were to go to trial.

Based on all of these factors, the Court finds Petitioner's plea was

7

intelligently, voluntarily, and knowingly entered.  In sum, Petitioner's plea represents a voluntary and intelligent choice among the alternative courses of action open to Petitioner.  *See, Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition.  He maintains that Counsel was ineffective when she failed to: (1) explain to the Petitioner the range in his applicable classification; (2) explain to the Petitioner the elements of the alleged offenses; (3) inspect the stolen items before they were returned to the victim; (4) file a motion to suppress the evidence she was unable to inspect; (5) investigate or challenge the grand jury testimony of co-defendant Faulkner; (6) advise the Petitioner about his plea agreement; and (6) advise the Petitioner as to whether he should exercise his right to trial.  The State counters that the Petitioner has not proven that Counsel was ineffective.  We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right.  T.C.A. § 40-30-103 (2014).  The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014).  The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it.  *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).  Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts.  *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).  A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness.  *Fields*, 40 S.W.3d at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution.  *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  The following two-prong test directs a court's evaluation of a claim for ineffective assistance of counsel:

First, the [petitioner] must show that counsel's performance was

deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). When the case involves a guilty plea, "a petitioner must establish that but for counsel's deficiency; he would have gone to trial instead of entering the plea of guilty." *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Having reviewed the record, we conclude that the Petitioner has not proven that his trial counsel was ineffective. He stated that he understood he was a Range II offender facing a lengthy sentence, and Counsel testified that she explained to the Petitioner the ramifications of being a Range II offender. Counsel also said that she explained to the Petitioner the elements of the offenses and the evidence the State intended to use against him. The Petitioner offered no evidence at the post-conviction hearing about any stolen items recovered from the van, and he therefore has not proven any allegations regarding Counsel's lack of investigating those items. Similarly, he offered no proof about how any further investigation would have provided exculpatory information.

About the plea agreement, we conclude that Counsel did fully advise the Petitioner about the agreement. She said that she explained to him multiple times the theory of criminal responsibility, discussed the evidence against him, and informed him of the rights he was waiving. Ultimately, Counsel advised the Petitioner to enter a guilty plea in exchange for a twenty year sentence, and considering the weight of the evidence against him, including his own incriminating statement, our review shows this was sound advice. The Petitioner has not proven that Counsel was ineffective or that he was prejudiced by her representation of him. He is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the Petitioner's petition for post-conviction relief. In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE